**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BARBARA POUGH, o/b/o K.P., a minor,

                              Plaintiff,

          - v -                                 Civ. No. 1:10-CV-1547
                                                                     (RFT)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**APPEARANCES:**                                        **OF COUNSEL:**

OFFICE OF PETER M. MARGOLIUS           PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

SOCIAL SECURITY ADMINISTRATION        JOHN M. KELLY, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER[1]

      In this action, Plaintiff Barbara Pough, on behalf of her son, K.P., a minor, moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her son's application for Supplemental Security Income (SSI).[2] Based upon the following discussion, this Court

---

[1] On December 1, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 13.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 10 & 11.

upholds the Commissioner's decision denying Social Security benefits.

## I. BACKGROUND

K.P., born on December 26, 1998, was eight years old at the time an application for SSI was protectively filed on his behalf by his mother, Barbara, on September 18, 2007. Dkt. No. 8, Admin. Tr. [hereinafter "Tr."] at pp. 85-89. Disability is claimed due to K.P.'s diagnosis of attention deficit hyperactivity disorder ("ADHD"). *Id*. at pp. 15 & 63. The application was denied initially. *Id.* at pp. 63 & 66-73. On June 19, 2009, a Hearing was held before Administrative Law Judge ("ALJ") Robert Ringler, and on July 15, 2009, the ALJ issued an unfavorable decision finding K.P. was not entitled to benefits. *Id.* at pp. 9-25. On October 22, 2010, the Appeals Council concluded that there was no basis under the Regulations to grant Plaintiff's and her son's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1-5. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

In this appeal, this Court must determine whether the ALJ applied the correct legal principles and whether substantial evidence supports the Commissioner's decision that K.P. was not disabled from September 18, 2007, the SSI application date, through July 15, 2009, the date of the ALJ's decision.[3]

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson*

---

[3] SSI benefits cannot be paid any earlier than the month after the month in which the application is filed. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

*v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, which modified the standards for determining whether a child is eligible for SSI disability benefits. *See* Pub. L. No. 104-193, 110 Stat. 2105 (1996) (codified as amended, 42 U.S.C. § 1305 *et seq*). To qualify for disability benefits under the Act, an individual

> under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The Act does not require that the severity of a child's impairment be of comparable severity to that of a disabled adult. In order to determine if a child is disabled, the ALJ must proceed with a three-step analysis. *See* 20 C.F.R. § 416.924(a). The first step requires the ALJ to consider whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is so engaged, he or she

will not be awarded SSI benefits. *Id.* If the child is not engaged in substantial gainful activity, the ALJ next considers the child's physical and mental impairments to determine whether they are severe. 20 C.F.R. § 416.924(c). If there is no medically determinable impairment or if there is only a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will not be considered disabled. *Id.* If a severe impairment is found, the ALJ must consider whether the impairment meets or is medically or functionally equal in severity to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 416.924(c) & (d).

### C. ALJ Ringler's Findings

Barbara Pough and K.P. testified at the Hearing before ALJ Ringler. Tr. at pp. 26-62. In addition to such testimony, the ALJ had K.P.'s school records, including a Teacher Questionnaire and Mid-Trimester Interim Progress Report, as well as medical records, consisting of treatment reports and opinions from various treating and/or examining physicians. *See generally id*. at pp. 102-25, 136-49, 181-91, 194-99, & 205-31.

Using the three-step disability evaluation, ALJ Ringler found that: (1) K.P. had not engaged in any substantial gainful activity at any time relevant to his decision; (2) he has a severe, medically determinable impairment, namely ADHD; and (3) his severe impairment does not meet, medically equal, nor functionally equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4, and, therefore, K.P. is not disabled. *Id.* at pp. 9-25.

### D. Plaintiff's Contentions

In a terse, four-paged Brief, which contains few citations to the record and even fewer case citations, Plaintiff contends that several errors were made at the administrative level that require remand. First, the Plaintiff states that the Appeals Council erred when it failed to remand the claim

back to the ALJ in light of new and material evidence presented to it. Next, the Plaintiff asserts that the ALJ erred when he failed to consider K.P.'s oppositional defiance diso rder and when he found that K.P.'s impairments did not functionally equal the Listings. *See generally* Dkt. No. 10.

1. Appeals Council Review

In support of her objections to the ALJ's decision, Plaintiff submitted new evidence in the form of K.P.'s Kinderhook Central School District 2010-2011 Individual Education Program ("IEP"). Tr. at pp. 1-3 & 168-76. Upon reviewing Plaintiff's objections and new evidence, the Appeals Council stated it "found no reason under [it's rules] to review the [ALJ]'s decision" and the information submitted by the Plaintiff "does not provide a basis for changing the [ALJ]'s decision," thus rendering the ALJ's decision the "final decision of the Commissioner of Social Security." *Id*. at pp. 1 & 2.

The Commissioner argues that this Court should only review the ALJ's written decision because the Appeal Council's choice not to review the ALJ's decision, despite the newly submitted evidence, is not a "final decision" for purposes of our judicial review. Def.'s Br. at pp. 9-10. The Commissioner is correct in his view that our judicial review of Social Security appeals is limited to the express Congressional consent to suit found at 42 U.S.C. § 405(g), which authorizes judicial review of cases arising under Title XVI of the Social Security Act. And, this statute conferring jurisdiction clearly limits our review to a particular type of agency action, that being a "final decision of the Secretary made after a hearing." 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108 (1977). However, in this case, we need not parse through what constitutes a final decision subject to our judicial review.

The Second Circuit has held that new evidence submitted to the Appeals Council becomes a part of the administrative record for purposes of our judicial review. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Second Circuit has also held that "when the Appeals Council denies review after

considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id*. (citation omitted). Accordingly, the Appeals Council's decision to review the new evidence yet decline review of the ALJ's decision is subsumed as the final decision of the Commissioner. In any event, we need not worry about whether we have the authority to review a decision rendered by the Appeals Council because we presume that the Plaintiff is seeking remand based upon the presence of new and material evidence, and will assess her claim as such.

The Regulations provide that when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470. Furthermore, 42 U.S.C. § 405(g) provides in pertinent part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ." (emphasis added); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998). In accordance with this provision, the Second Circuit requires the Plaintiff to show that the proffered evidence is "(1) new and not merely cumulative of what is already in the record . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . [and] (3) good cause [exists] for [claimant's] failure to present the evidence earlier." *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43 (internal quotation marks and citations omitted).

The evidence submitted to the Appeals Council was developed in May 2010, long after the

ALJ's July 2009 decision, and it concerns the upcoming school year plan, and not a retrospective on the time period at issue in Plaintiff's disability application. Tr. at pp. 168-76. Thus, the Court is hard pressed to find that the information is relevant to K.P.'s condition during the time period at issue – September 18, 2007, the date of K.P.'s SSI Application, through July 15, 2009, the date of the ALJ's written decision. Plaintiff admits that the 2010-2011 IEP post-dates the ALJ's decision, but asserts that it is "new and material" because it "strongly suggests that, during the relevant period of time, [K.P.'s] condition was far more serious than previously thought." Pl.'s Br. at p. 2. Plaintiff points to the Wechsler Intelligence Scale for Children IV testing performed on January 5, 2010, which revealed a Verbal IQ score of 65. Pl. Br. at p. 2. Plaintiff then argues that this IQ score "along with the established diagnosis of ADHD indicates that [K.P.] meets" Listing 112.05(D),[4] which states, in relevant part:

> 112.05. Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning [and accompanied by]
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, § 112.05(D).

Despite K.P.'s 65 IQ and diagnosis of ADHD, the record does not support the contention that during the relevant time period he had deficits in adaptive functioning as required by § 112.05. In order to meet this Listing, K.P. must present a marked limitation, which Plaintiff correctly notes can be indicated with a standardized test score that is between two and three standard deviations below the norm. 20 C.F.R. § 416.926a(e)(2)(iii). But Plaintiff omits the fact that she must also present limitations in day-to-day functioning in domain-related activities that are consistent with such scores. *Id.* As noted by the ALJ (explained more fully below), K.P. does not present marked limitations in any of the six

---

[4] Although Plaintiff cites to § 112.05(C), we believe this was in error because Part C requires a "valid verbal, performance, or full scale IQ of 59 or less," and such conditions are not present in the medical record.

domain-related activities.

In any event, Plaintiff's reliance on the results of the Woodcock-Johnson-III ACH test is misplaced as it does not support her theory that K.P. scored more than two standard deviations below the norm. At the time of the test, K.P. was in fifth grade. While a number of his scores were below his grade level, such as passage comprehension, reading fluency, math fluency, and writing samples, a number of other scores were well above K.P.'s grade level, such as letter-word identification, calculation, applied problems, and spelling. Furthermore, the Commissioner does not rely on test scores alone in rendering a decision because "[n]o single piece of information taken in isolation can establish whether [a claimant] [has] a 'marked' or an 'extreme' limitation in a domain." *Id*. at § 416.926a(e)(4)(i). In rendering his decision, the ALJ was aware that K.P. received an IEP for the upcoming school year, as K.P.'s mother testified about this as well as his functional limitations. The ALJ also had teacher and doctor evaluations which discussed K.P.'s functional limitations in the relevant domains during the relevant time period. As such, this purportedly "new and material" evidence does not provide a basis for a remand.

## 2. Step Two – Severe Impairments

In determining at Step Two the severity of K.P.'s impairments, the ALJ found that the medical evidence supported the finding that K.P.'s ADHD was severe. Tr. at p. 15. In support of this finding, the ALJ cites to the diagnosis and treatment notes rendered by K.P.'s treating physician, Dr. Harde, and the consultative psychiatric evaluation completed by Annette Payne, Ph.D., a state agency psychologist. *Id*.

Plaintiff asserts that the ALJ erred by not considering K.P.'s oppositional defiant disorder, as that diagnosis is reflected in the Columbia County Mental Health records. Pl.'s Br. at p. 3. However,

neither of the consultative examiners, Dr. Payne nor Dr. Weiss, diagnosed K.P. with this disorder, and K.P.'s treating physician, Dr. Harde, disagreed that K.P. was defiant. Tr. at pp. 38, 187, & 194. The ALJ's decision provides sufficient explanation for finding K.P.'s ADHD to be severe, and he need not have provided an explanation for failing to reconcile "every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981); *see also Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. Jan. 6, 2012) (unpublished opinion) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), for the proposition that the ALJ is not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Thus, we find that the ALJ committed no error at Step Two by not finding K.P.'s purported oppositional defiance disorder was severe.

### 3. Step Three – Functional Equivalence

At Step Three, the ALJ must determine whether a claimant's impairments meet or are medically or functionally equal to a disability set forth in the "Listing of Impairments" under 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 416.924(d); *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). If an impairment is found to meet, or qualify as medically or functionally equivalent to a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos v. Barnhart*, 2003 WL 21032012, at *8.

In determining whether an impairment is functionally equivalent to a listed impairment, the ALJ must assess the child's developmental capacity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §§

416.926a(b)(1)(i)-(vi). If the child has marked limitations in two domains or an extreme limitation in one domain, then the child's impairment is functionally equivalent to a disability in the Listings. 20 C.F.R. § 416.926a(d).

Plaintiff challenges two of the ALJ's domain assessment, namely that K.P. had "less than marked" limitations in (1) acquiring and using information, and (2) attending and completing tasks, which Plaintiff asserts K.P. has marked limitations in each.

Under the Regulations, a marked limitation generally means that a child's

> impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The claimant's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

In rendering the functional assessment, the ALJ considered the testimony of K.P. and his mother; the opinions/medical records provided by Drs. Harde and Payne; and school records, that included a Teacher Questionnaire and Interim Progress Report. Tr. at pp. 15-22. In summary, the ALJ made the following findings for each domain:

(1) acquiring and using information — less than marked limitation in function;

(2) attending and completing tasks — less than marked limitation in function;

(3) interacting and relating with others — no limitation in function;

(4) moving about and manipulating objects — no limitation in function;

(5) caring for yourself — less than marked limitation in function; and

(6) health and physical well-being — no limitation in function.

*Id*. at pp. 17-22.

In reviewing each of the six domains, the ALJ considered the opinions included in the record and explained the respective weight he accorded to each. With regard to the opinion rendered by Dr.

Payne, a state agency consultative examining psychiatrist, the ALJ accorded little weight to the medical source statement because it was deemed to be internally inconsistent with Dr. Payne's mental status examination and inconsistent with treatment notes from Dr. Harde and K.P.'s school teachers. *Id*. at p. 17. The ALJ also noted that K.P.'s ADHD had improved significantly with medication, a sentiment shared by K.P.'s mother and further reflected in Dr. Harde's medical statement. *Id*. at pp. 16 & 182

*a. Acquiring and Using Information*

The domain "acquiring and using information" addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The ALJ stated that K.P. had less than a marked limitation in function in this category, and that this finding is supported by the opinions of Michele Carey, K.P.'s fourth grade teacher. Tr. at pp. 17-18. As the ALJ noted, the Teacher Questionnaire completed by Mrs. Carey shows that K.P. was reading and doing math at a fourth grade level, with his written language gauged at a third grade level. *Id*. at pp. 18 & 208. Mrs. Carey further noted slight problems in comprehending oral instructions, learning new material, and understanding school and content vocabulary; the latter area assessment was an improvement from the beginning of the year. *Id*. at pp. 140 & 209. Obvious problems were noted in the areas of reading and comprehending written material and comprehending and doing math problems, and a serious problem was noted in the area of recalling and applying previously learned material. *Id*. at p. 209. Lastly, Mrs. Carey noted that K.P. had very serious problems in the areas of understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions. *Id*. Although K.P.'s problems in these areas worsened as the school year progressed, it does not follow that K.P. reached the level of marked limitations. Plaintiff highlights Mrs. Carey's evaluation as proof positive that K.P. suffers from

marked limitations in this area. Indeed, Plaintiff may not agree with the ALJ's assessments of Mrs. Carey's statements, but Plaintiff failed to show how the ALJ's conclusion is not supported by substantial evidence, or that the ALJ made legal errors in rendering his conclusion. As such, we find that the ALJ committed no error in his functional assessment of K.P. in this domain.

*b. Attending and Completing Tasks*

The second domain, attending and completing tasks, involves an analysis of how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). It also refers to how well a child begins, carries through, and finishes activities, including the pace at which he performs activities and his ease in changing activities. *Id*. In this domain, the ALJ noted less than marked limitation, and provided the following analysis:

> [Mrs. Carey indicated] that [K.P.] has a slight problem in paying attention when spoken to directly; carrying out simple and multi-step instructions; and completing work accurately without careless mistakes. [K.P.] has no problems sustaining attention during play and sports activities. [K.P.] has an obvious problem in refocusing to tasks when necessary; and waiting to take turns. [K.P.] has a serious problem in changing from one activity to another without being disruptive; working without distracting self or others; and focusing long enough to finish tasks. [K.P.] has a very serious problem in organizing own things or school materials; completing class/homework assignments; and working at a reasonable pace/finishing on time.
>
> Mid-Trimester Interim Progress Report dated January 2008 from Ichabod Crane Elementary School indicated that the claimant needs to listen carefully to direction; needs to be reminded to return to work; has difficulty finishing work on time; needs to work quietly in class; often forgets materials needed for class; and organization skills need improvement. However, it was noted that his homework is handed in mostly on a regular basis; and that his homework is completed mostly with best effort[s]. He also consistently use[d] the homework planner.

Tr. at p. 19 (internal citations omitted).

As with the previous domain, Plaintiff does not attack the sufficiency of the evidence nor the legal standards used by the ALJ. Instead, Plaintiff merely recites the same evidence the ALJ relied upon, but transmits a different opinion. This is not the correct standard by which we are required to

review final decisions rendered by the Commissioner. Instead, our review is focused on whether the correct legal standards were followed and whether the conclusions are supported by substantial evidence of record. Merely restating the evidence relied upon by the ALJ followed by an opposing conclusion, with little else, is not enough to convince this Court that reversal is appropriate. Furthermore, Plaintiff's reliance on the one-time consultative assessment by Dr. Payne is futile, as the ALJ properly discounted her opinion, as noted above, and adequately stated his reasons for doing so. As such, we find that the ALJ used the correct legal standards in assessing this functional domain and his conclusion is supported by substantial evidence, thus, no reversal is warranted.

### III. CONCLUSION

The Court has considered all of the Plaintiff's arguments in support of remand and find them to be unavailing. In light of the foregoing discussion, it is clear that in finding K.P. was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence. Thus, this Court finds that such decision should be upheld.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: September 28, 2012
      Albany, New York

                                                                   _____
Randolph F. Treece
U.S. Magistrate Judge